UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHERINE B.,

          Plaintiff,

    v.                                                 **DECISION AND ORDER**

                                                                       23-CV-124S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

    1.    Plaintiff Katherine B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her application with the Social Security Administration on June 26, 2015. Plaintiff's alleged disability began on January 1, 2000. Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On November 17, 2017, ALJ Paul Georger held a hearing at which Plaintiff was represented by counsel and Vocational Expert Rachel Duchon appeared and testified. (R.[2] at 13, 28-58, 588-605.) At the time of the hearing, Plaintiff was a 24-year-old woman with a high school education but no past relevant work. (R. at 21, 549.)

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial. This includes recasting captions from earlier decisions involving this Plaintiff.

[2] Citations to the underlying administrative record are designated as "R."

4. The ALJ considered the case *de novo* and, on February 28, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 13, 591.) After the Appeals Council denied Plaintiff's request to review the ALJ's decision (R. at 1, 606), she filed her first action challenging the Commissioner's decision. This action resulted in a Decision and Order issued by Hon. Charles J. Siragusa on September 22, 2020, that remanded the case for further proceedings. Katherine [B.] v. Comm'r, No. 1:19-CV-0254 CJS, 2020 WL 5640241 (W.D.N.Y. Sept. 22, 2020). (R. at 614.)

5. Judge Siragusa held that the ALJ failed to address the lack of clarity on how the ALJ weighed the opinion of consultant examiner, Dr. Janine Ippolito, Psy. D. Id. at *5. (R. at 624-25.)

6. On October 6, 2020, the Appeals Council vacated the ALJ's 2018 decision and directed further administrative proceedings consistent with Judge Siragusa's Decision and Order. (R. at 628, 524.)

7. On remand, Plaintiff alleged disability due to migraine headaches, seizure disorder/syncopal episodes, anxiety disorder, depression, bipolar disorder, conversion disorder, and post-traumatic stress disorder ("PTSD"). (R. at 526.) On this application, the ALJ conducted a hearing on September 8, 2022, where Plaintiff again was represented by counsel and vocational expert Marne South appeared and testified. (R. at 524, 559-87.) On November 2, 2022, the ALJ issued a written decision denying Plaintiff's claim for benefits. (R. at 524.)

8. After this second ALJ decision, Plaintiff filed the current action challenging the Commissioner's final decision.[3] (Docket No. 1.)

---

[3] The ALJ's November 2, 2022, decision became the Commissioner's final decision on this matter by operation of 42 U.S.C. §§ 405(g), 1383(c)(3).

2

9.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 11.) Plaintiff filed her Reply Brief on July 28, 2023 (Docket No. 12), stating that no formal reply was needed (id. at 1). This Court then took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted.

10.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

11.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

3

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

13. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

14. Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

15. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2015, the application date. (R. at 526.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: migraine headaches, seizure disorder/syncopal episodes, anxiety disorder, depression, bipolar disorder, conversion disorder, and PTSD. (R. at 526.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 527.)

16. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work. The ALJ qualified this finding by recognizing that Plaintiff could occasionally use ramps and stairs but not ladders, ropes, and scaffold. The ALJ found that Plaintiff could occasionally balance, stoop, crouch, and crawl. Furthermore, the ALJ found that Plaintiff could not be exposed to unprotected heights or moving mechanical parts and could not operate a motor vehicle. The ALJ also found that Plaintiff

could have occasional interaction with supervisors, coworkers, and the public; occasional changes to the worksite and routine; and occasional exposure to bright light, loud noise, and strong odors.  (R. at 530.)

17. At Step Four, the ALJ found Plaintiff had no past relevant work.  (R. at 549.)  At Step Five, the ALJ posed hypotheticals to the Vocational Expert for claimant similar in age, education, work experience, skills, and RFC to Plaintiff.  The Expert opined that this hypothetical claimant could perform such light exertion jobs as marker, garment sorter, and router.  (R. at 549-50.)

18. Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 550.)

19. Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ erred in considering the opinion of Horizon Health Services ("Horizon") social worker Jillian Pitiss, LMSW, for Plaintiff's psychological conditions.  For reasons that follow, this Court rejects Plaintiff's arguments and finds that the ALJ had substantial evidence to support his evaluation of Ms. Pitiss' opinion.

20. The applicable pre-March 27, 2017, regulations listed eight categories of providers that were deemed acceptable medical sources.  20 C.F.R. § 416.902(a).  This list, however, did not include social workers such as Ms. Pitiss.  See id. § 416.902(j)(3).

21. Nevertheless, the regulations also provided that the ALJ may consider opinions from such non-acceptable medical sources even though these opinions are not entitled to controlling weight.  Id. §§ 416.913(a)(4), 416.927(f)(1).  The ALJ considers these opinions under the same factors for consideration of an acceptable medical source.  Id. § 416.927(f)(1), (c)(1)-(6).  These include the consistency of the opinion with the record as a whole; the length, nature, and extend of the treatment relationship; relevant evidence

which supports the opinion; and acknowledging any specialization of the source. E.g., Jonathan S. v. Comm'r, No. 1:20-CV-1177 (WBC), 2022 WL 44700, at *3-4 (W.D.N.Y. Jan. 5, 2022); 20 C.F.R. § 416.927(c).  The regulations specifically provide that not every factor listed above will apply in every case based upon the particular facts in each case and that the ALJ must explain the weight given to an opinion to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  20 C.F.R. § 416.927(f)(1), (f)(2).

22. Furthermore, the ALJ may choose between properly submitted medical opinions. McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (citation omitted); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).  It is for the ALJ, and not this Court, to weigh these conflicting opinions in the record. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).  The ALJ is entitled to weight all the evidence to make the RFC consistent with the record, Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013), and resolve any conflicts in the record, see Richardson v. Perales, supra, 402 U.S. at 399.  This Court defers to the ALJ's findings and will not reweigh the opinion evidence. See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016).

23. Social worker Jillian Pitiss examined Plaintiff on May 19, 2022, and diagnosed her with bipolar II disorder, PTSD, and generalized anxiety disorder.  (R. at 1667.)  Ms. Pitiss opined that Plaintiff "struggle[d] with emotion regulation and tolerating distress due to variety of past trauma," while struggling with generalized anxiety and anxiety relative to social settings where she had to engage with others.  (Id.)  Ms. Pitiss found that Plaintiff was unable to meet competitive standards of employment in several mental abilities and aptitudes such as in maintaining attention for two-hour segments;

working in coordination with others without being unduly distracted; and completing a normal workday and workweek without interruption from psychologically based symptoms. (R. at 1669-70.)  Ms. Pitiss also found that Plaintiff was seriously limited in making simple work-related decisions; asking simple questions or requesting assistance; and being aware of normal hazards and taking appropriate precautions; understanding, remembering, and carrying out detailed instructions; interacting appropriately with the public; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness.  (Id.)  Ms. Pitiss concluded that Plaintiff would miss more than four days per month due to her impairments or treatment thereof.  (R. at 1671.)

24.    The ALJ afforded Ms. Pitiss' opinion little weight because of its inconsistency with the opinion of Dr. Janine Ippolito.  (R. at 349, 545-46, 547-48.)  The ALJ also found that Ms. Pitiss' opinion was inconsistent with Plaintiff's "routine and conservative outpatient mental health treatment," Plaintiff's reports of her improvement following this treatment, and her "largely unremarkable mental status examination findings." (R. at 547-48, 543.)  This Court finds that the ALJ's evaluation of Ms. Pitiss' opinion was supported by the record.

25.    Specifically, Dr. Ippolito examined Plaintiff on September 3, 2015, when Plaintiff told the doctor that she believed counseling was somewhat helpful in managing her symptoms.  (R. at 349.)  Plaintiff also stated that she suffered from bullying as a child, which exacerbated her trust issues.  (R. at 350.)  Plaintiff also reported having panic attacks characterized by chest pain, breathing difficulties, and dizziness.  (R. at 350.)

y
z

26. Dr. Ippolito found that Plaintiff suffered from migraines and anxiety (R. at 349) that manifested in her experiencing general apprehension, worry, nervousness, frequent nightmares, and avoidance of people (R. at 350).

27. As a result of the examination, Dr. Ippolito opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitation. (R. at 352.) Dr. Ippolito also found that Plaintiff was able to relate adequately with others and appropriately deal with stress with moderate limitations. (R. at 352.) While consistent with Plaintiff's psychiatric problems, Dr. Ippolito concluded that these limitations by themselves do not appear "to be significant enough to interfere with the claimant's ability to function on a daily basis." (R. at 352.) Dr. Ippolito found that Plaintiff's prognosis was "fair to good with continued mental health treatment." (R. at 352.)

28. On remand, the ALJ gave substantial weight to Dr. Ippolito's opinion because of the doctor's thorough consultative psychological examination and her detailed notes. (R. at 545, 546.) The ALJ found that Dr. Ippolito's opinion was consistent with her examination findings, Plaintiff's conservative mental health treatment, reports of improvement, and Plaintiff's unremarkable mental status findings. (R. at 546.)

29. Under the applicable regulations for evaluating medical evidence, 20 C.F.R. § 416.927(c), Plaintiff now argues that the ALJ should have given greater weight to Ms. Pitiss' opinion and should not have relied on Dr. Ippolito's contrary opinion that was issued after a single examination and that was an outlier to the rest of the record.

9

30. This Court disagrees and concludes that the ALJ had substantial evidence supporting the weight given to Ms. Pitiss' opinion.

31. Considering the examining and treatment relationships, Ms. Pitiss evaluated Plaintiff before examining her. See 20 C.F.R. § 416.927(c)(1), (2). She relied on Plaintiff's self-reporting and reports from an unnamed prior Horizon counselor to render her opinion regarding Plaintiff's mental health limitations. (R. at 1671.) Therefore, the ALJ properly afforded this assessment little weight because where, as here, its conclusion is based merely on review of the medical file without examination of the claimant it is "entitled to little, if any, weight." Rodriguez v. Astrue, No. 07 Civ. 534(WHP)(MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009).

32. Ms. Pitiss first examined Plaintiff on May 24, 2022 (R. at 1873-74), days after her May 19th assessment. (R. at 1671, 1853.) Ms. Pitiss' report of the frequency of Plaintiff's treatment and her limitations since December 2018 appears to include assessments of all Horizon counselors from 2020 that predated Ms. Pitiss' own initial session with Plaintiff. (R. at 1667, 1671.) Furthermore, the record does not demonstrate that Ms. Pitiss treated Plaintiff prior to issuing her assessment on May 19, 2022. This Court finds that the ALJ appropriately weighed Ms. Pitiss' non-examining opinion because Ms. Pitiss had not yet established an examination or treatment relationship with Plaintiff when she rendered her assessment, and because her assessment is essentially based on her review of the opinions of other Horizon professionals and Plaintiff's subjective complaints.

33. As for the consistency of Ms. Pitiss' opinion with the entire record, ALJ pointed out the inconsistency of that opinion with that of Dr. Ippolito as well as Plaintiff's

conservative and active outpatient mental health treatment and improvement arising therefrom.  (R. at 541, 543-44, 545, 548; see R. at 926-27, 1091-92, 1106-08, 1776-78, 1853, 1872, 1963.)  See 20 C.F.R. § 416.927(c)(4).

34.     Plaintiff refutes this inconsistency by citing her treatment notes to show how much Dr. Ippolito's opinion was an outlier.  (R. at 1091, 1106, 1872.)  For example, on September 20, 2019, Plaintiff points out that she presented as malodorous on examination with an odd affect, sleeping too much, with a fair appetite.  (R. at 1106, 1108.)  However, during the same examination Plaintiff also reported that her mood was good and relatively stable.  The doctor found that her cognition, insight, and judgment were normal or fair.  (R. at 1106-08.)  On February 13, 2020, Plaintiff was found to have depressed and anxious mood (R. at 1091), while her affect was congruent to her mood, and her cognition, thought processes, and insight and judgment were normal or fair.  (R. at 1091-92.)  On July 20, 2022, Plaintiff reported that her mood was "pretty stressed" while her examination findings demonstrated that her thought process, content, attention and concentration, cognition, insight, and judgment were normal or fair.  (R. at 1871, 1872.)

35.     The ALJ characterized these same treatment notes as revealing Plaintiff's condition was unremarkable.  (R. at 544, 548.)  Where, as here, the ALJ has substantial evidence, he may weigh that evidence to determine whether Plaintiff's mental health was unremarkable and this Court must defer to the weight given.  See Schaal, supra, 134 F.3d at 504; Krull, supra, 669 F. App'x at 32.

36.     Merely considering so much of the record cited by Plaintiff, this Court finds that the ALJ had substantial evidence to conclude that Plaintiff had unremarkable mental

status examinations. The record of Plaintiff's treatment and improvement therefrom supports the weight the ALJ gave to Ms. Pitiss' opinion.

37. The specialization factor is not dispositive here because Ms. Pitiss is a social worker, a non-accepted medical source. See 20 C.F.R. § 416.927(c)(5). The ALJ nevertheless did acknowledge her expertise therein by repeatedly noting her role as a social worker. (R. at 547.)

38. Applying the factors for weighing opinions from non-acceptable medical sources, this Court concludes that the ALJ appropriately applied those factors to weigh Ms. Pitiss' opinion and give it less weight. Ms. Pitiss' assessment arose merely from her review of Plaintiff's file and Plaintiff's subjective complaints prior to Ms. Pitiss' own initial therapy session.

39. Essentially, Plaintiff's objection rests upon the ALJ's rejection of one opinion source (Ms. Pitiss) and his acceptance of another source (Dr. Ippolito). Contrary to Plaintiff's assertion, this Court finds that the ALJ properly assessed Ms. Pitiss' opinion under the applicable regulations and afforded that opinion "little weight." Reviewing the medical record, this Court concludes that there was substantial evidence supporting the ALJ's assessment of Ms. Pitiss' opinion and its consistency therewith including use of Dr. Ippolito's supported opinion as a comparator.

40. This Court also finds that the ALJ properly relied upon Plaintiff's conservative outpatient treatment and otherwise unremarkable mental status examination results to conclude that Ms. Pitiss' opinion was inconsistent with the overall medical record. Therefore, this Court concludes that there is substantial evidence for the weight the ALJ applied to Ms. Pitiss' opinion.

41. As a result, Plaintiff's Motion for Judgment on Pleadings is denied.

42. Accordingly, having reviewed the ALJ's decision and considering Plaintiff's arguments, this Court finds no error in the ALJ's determination because the ALJ had substantial evidence supporting his evaluation of the opinions of social worker Pitiss and Dr. Ippolito.  Thus, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      April 24, 2024
            Buffalo, New York

                                            s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                        United States District Judge